Good morning. Our first case this morning is in Rae Lex Group. Thank you, Judge Rader. Good morning, Your Honors, and may it please the Court. The issue that brings us here today is whether there exists in the record substantial evidence for the trademark trial and appeal board's decision that the Mark E. Lex E-LEX is merely descriptive of the goods and services for which the application was filed. Substantial evidence is a high burden, isn't it? It is not the highest, but it is a significant burden. We are willing to grant that. And those goods and services specifically being litigation support services for attorneys provided via an electronic network with court-specific consultation on the rules and implementation of procedure for filing electronically. Now, first and foremost, we'd like to get out of the way that we don't believe the E part of the E-LEX mark cuts either way necessarily. We believe that the crux of the inquiry here should be focused on the Lex portion of the application. So while this Court is obligated to look at the mark as a whole, we think that the suggestiveness portion, the part of the mark that pushes this application over the line into suggestiveness is the Lex portion of the mark. Lex means law, so why doesn't it describe legal services? It doesn't describe legal services. It may describe legal services. Our contention is that the services provided by the Lex group under the E-LEX mark are not legal. That what they do is essentially the role of a trusted printer in an SEC filing case. That what they do focuses not on the provision of legal services. You mean Lex advertises itself as being a printer? They advertise themselves, the Lex group under this E-LEX mark specifically advertises itself as a service that guarantees acceptance when an appellant or a petitioner files a brief with a federal prosecutor. Doesn't it also put itself up as knowledgeable concerning the rules of appellate practice and briefing and all that? That's legal. The rules with which it professes or to which it claims knowledge are not the federal rules of civil procedure. They're not the federal rules of appellate procedure. They're specifically the rules about pagination and font size and whether you can use a serif font or a sans serif font. Have you looked at pagination and all of that in the federal rules of appellate procedure? I have. They're in there. Well, they are in there. I know in this court they're in there sort of as an addendum or as an aside or as a footnote for the most part. And that what they will not, the Lex group does not provide under the E-LEX mark or at all information on a filing deadline or whether or not your statement. What you're saying is it's a close question. That doesn't negate having met the substantial evidence test. What we think is that it comes down specifically to, there's one part that's demonstrative in the appellee's brief, and it's specifically on page 17. They quote Wright and Miller, federal rules of practice or federal practice and procedure, a case from the Eastern District of Wisconsin, and the Rules Enabling Act. And those specifically say that the federal rules of civil and appellate procedure, that those have to do, that those have the effect of law. But at no point is there substantial evidence anywhere in the record saying that issues that would be decided by a court's clerk and not by the court itself, that those are law. So the way that this case moves from the descriptiveness side of the line to the suggestiveness side is when we think about the relevant person in public, the lawyers that appear before you every day. When they see ELEX, it's our position that they don't think the services that are provided under the ELEX mark. That when they think about the service that the ELEX group actually provides. We're talking about what people think about. Did I miss surveys? Were there surveys in the record showing what? Unfortunately, we didn't have the money to conduct a massive survey, so we'll have to rely on our own experience. Rely on attorney arguments. I would like that. Do you, I'm sorry, you wanted to finish your point. Oh, I was just going to say that when the average attorney, the average patron of a service considers, thinks about law, thinks about E-law, they don't think about whether or not their brief will be accepted by the clerk's office. They don't think about whether or not they've submitted a scanned PDF versus a text searchable PDF, which is something that the ELEX group provides under the ELEX mark. But certainly a lawyer who, if you hired a lawyer to do appellate services, that would encompass the service that your group performs, correct? You would expect that that lawyer would make sure that the brief that was filed comports with the rules of the particular court as well as the rules of appellate proceedings. It would. So they're doing a subset of the services that you suggest would be described by the term ELEX to a casual observer. Yes, we don't claim, Judge Bryson, that there's no relation between our service and the law, that it's a complete vacuum. But we think that, so this service, while not necessary, is provided to lawyers and is provided in the field of law. Right, now let me see if I understand what the burden of your argument is. Are you suggesting that the term ELEX, which would be descriptive for a broad array of legal services, ceases to be descriptive when the legal services that are performed are the services, we'll call them services, that a lawyer would perform in the ordinary course of providing appellate services, let's say? When the specific services are narrower than all the services that would be provided. Now, what if you had, though, the term ELEX and it was used by a group of admiralty lawyers? So they weren't providing all services that lawyers provide, but a very specific legal service, it would still be descriptive, would it not? Well, in that case, we believe it would. But this thing that separates that hypothetical from what we have here is that in order to provide admiralty law services, to provide legal counseling, you would have to be barred. You would have to be an admiralty lawyer. The people that work at the ELEX group and the people that are allowed by law to compile these briefs, or that are allowed to compile these briefs, don't have to be lawyers. They don't have to practice law. Now, are you familiar with the case—well, I'm sure you are because the other side has cited it—called Opadol from this court? Yes. Now, that seems to me to be pretty close to this case. That's a case involving the mark patents.com, and it was deemed to be descriptive for a service which wasn't prosecution of patents or litigation of patents, but merely software tracking patents. What's the distinction you see between that case and this one? The distinction there is—if memory serves about that case specifically—is a large issue of that case is whether adding the .com moved it around. Well, that was one of the issues. Right. But the whole thing, nonetheless, I think it is fair to say, is that the reference to patents, even though the service isn't everything to do with patents, nonetheless was enough to render descriptive the mark that as pertaining to an entity that performed only a small subset of what you might think of as patent-related work. Right. We believe specifically what would separate our case from that one is the relevant consumer. So while, in that case, anyone can go to patents.com looking for advice about patent software tracking and anything, so something having to do with patents, the relevant consumer here is lawyers. And we think that when a lawyer hears or sees or becomes familiar with the term e-lex, that they may move, while they may move from there, to thinking, okay, if lex means law, which having taken four years of Latin, I was still unfamiliar with. And to make a quick aside, we believe it is important that we don't say we practice trademark lex, or that Bilski may affect patent lex. That it takes a certain amount of imagination, thought, and perception to move from the average lawyer seeing e-lex and thinking e-law is the first step. And second, that lawyer would have to think that by law, we meant not case law or common law or statutes, or not even the federal rules of civil procedure or the federal rules of appellate procedure, but that by law, in the term e-lex, e-law, that we mean those specific filing requirements, that we mean pagination and margin sizes. So we believe that because the thing that separates us from cases like Opadol and the lawyers.com case is the fact that anybody could see those, and the thing immediately called up in their imagination, the information immediately conveyed to them would be specifically, or would be so broad, and would cover what patents.com and what lawyers.com are talking about. Whereas the idea that we think is conjured up or suggested in the head of a lawyer when they see the term lex or law is not filing requirements. It's not margin sizes. Let me make sure that I understand exactly what you're saying with respect to e-lex vis-a-vis e-law. If it said e-law, would you still be making the same argument? We would. We would. And that's because we don't believe that the services are legal services, as the relevant consumer lawyers would consider it. We believe that our case is actually closer to the In-Ray Colonial Stores and the In-Ray Dave Court cases, which are the sugar and spice case, and specifically the In-Ray Dave is cultured for pancake mix. So there, they actually did register culture for pancake mix, an actual ingredient in baking, in the pancake mix itself. And that was allowed to proceed to registration because most people wouldn't immediately think pancake mix, although they could arrive there after some imagination, thought, and perception. We believe that's the same thing that happens, that would happen and does happen when lawyers see our e-lex mark. They move, after thinking about it for a while, they may eventually arrive at our service. I would think e-law would get pretty close to even being generic, wouldn't it? I think so. I think it's certainly closer in my mind than e-lex. But we believe that the lex portion, in combination with it being a relatively obscure synonym for law, or definition, or synonym for law, that in combination with the fact that our services, while provided to lawyers and minimally legally related, moves it from the descriptiveness side of the line to the suggestiveness side of the line. Now, we've said in both the Goulet case and that Opendahl case that a mark can be descriptive even if it doesn't cover the full scope and extent of the services that you're offering. How do you get around those? We get around that, again, by falling back to the fact that the services are not legal, that we're not actually providing legal service. So while we are related to law, and while—so this sort of answers Judge Bryson's question. But is the relatedness enough? Because that's a characteristic of what you're doing, and we've said in several of our opinions you can be descriptive of a characteristic. Right. So it may be—we would argue that it is not an ingredient, quality, characteristic, or purpose. That it's more—that it requires imagination, thought, and perception. That gets to the very heart of the issue between what's a suggestive mark between what's a descriptive mark. And we think that it falls on the suggestiveness side of the line. You could make an argument that every suggestive mark has an ingredient, a quality, or characteristic. But it's where this line falls, and this is admittedly a close case. But we think it has to do with—this comes back to the N. Ray Dave case, when culture was registered for pancake mix, where that was literally an ingredient of pancake mix. Where sugar and spice in N. Ray Colonial stores are literally ingredients in pancake mix. The Hew Lake case is even further away, though. Remember, that was the one where apple pie is just descriptive of a characteristic of potpourri. It's scent. Right. And it's—that one seems to me to require a good deal more imagination than this. We would say—I would say that it doesn't. Specifically when it comes to what the average lawyer thinks of, what we all think of when we hear the term law. I'm sure that when people come to the Federal Circuit Court of Appeals with legal issues, the things that are heard by this panel and the other panels are not whether or not a brief was properly rejected because it was a scanned—it was not scanned searchable PDF—text searchable PDF. It was, in fact, a scanned PDF. You better get it right, though, because it won't even come to us. Exactly. Stop at the clerk's office. Yeah, which is yet another reason. So the fact that the clerk is the one who decides it is yet more evidence to the fact that the average lawyer wouldn't consider those sorts of issues, the type of service provided here, to be law. I think if you surveyed lawyers who practiced before this court, I think you would find that many of them spend a good deal of time comporting with the rules that we're—the clerk's office is pretty much sticklers for these kinds of things, as you may have discovered, perhaps. But the lawyers who don't have a service such as the one that your client provides do spend, my impression is, a fair amount of time making sure that their briefs comport with all the rules. It does seem to me that it's pushing it to say that that isn't something lawyers do. It may be something that you don't require a lawyer to do, but I think it's at least our anecdotal experience that lawyers do spend, in fact, a lot of time doing those things. I would agree with that, Judge Bryson. And I believe that, once again, it's a close call. We would never say that there's no relation between the law and what we do under the ELEX mark. What we would say is whether or not that information is immediately conveyed by the ELEX mark, whether the ELEX mark immediately conjures up in the mind of the relevant consumer the part of their job they spend dealing with the rules, filing electronically for brief submission, or whether they think of something else, mainly actual substantive law. So unless there are any more questions, I'll save the remainder of my time for rebuttal. Thank you. I've actually consumed your rebuttal time, but we'll restore that. Could you give Ms. Heber an extra two minutes, should she need to use it, and then we'll be all even. You may proceed. May it please the court. This is a straightforward descriptiveness case. Descriptiveness is a question of fact. And here the board made fact-finding based on substantial evidence in the record that ELEX is merely descriptive of appellants electronically provided. How do we make a distinction between suggestiveness and descriptiveness? It's a pretty fuzzy line, isn't it? It is a fuzzy line. Not in this case, but in some cases it is a fuzzy line. The test for descriptiveness is whether or not the relevant purchasing public, here lawyers, knowing what the services are, they're buying these services, litigation support services, would, when confronted with ELEX, get some knowledge immediately from seeing that term and know a feature or function characteristic of the services, or would they have to do some kind of mental gymnastics or imagination, perception, some speculation to reach a conclusion as to what the services involve. And here you need only look at the identification of services. On their face, they're legal-related in three different ways. It starts out with litigation. In the record there's a definition of litigation means to contest at law. Litigation support services for attorneys, those who practice law, those who would be most familiar with the definition of ELEX, provided by an electronic network, that's the E component, with court-specific consultation on the rules and implementation of procedures for filing electronically. And as Judge Lori mentioned, the rules, they are the law. The pagination, all those formalities, those are part of the Federal Rules of Appellate Procedure, and this court modifies them to some degree, but those are nonetheless the law. So on the face of the idea itself, and combined with the dictionary evidence of record, again, this is a fact-finding, and that is substantial evidence in the record to support the board's conclusion that ELEX is merely descriptive. Would you say that because your opponent concedes that this is a close case, that's almost an admission that this is substantial evidence? If the court wanted to construe it that way, yes, I'd like that very much. Substantial evidence isn't a lot. No. If it's close. If it's close, you have to defer to the board. If a reasonable fact-finder could find, as the board did, based on the evidence of record, you must defer. In what circumstances do you think we could make a judgment about the perception of the ordinary consumer of these services that would differ from that of the board? If there was conflicting evidence in the record, not just attorney argument, I mean, the evidence is basically stipulated, too. E is electronic, law means law. You put them together, and the board found there's no change in meaning. Now, in a case like the sugar and spice case, there, yes, sugar and spice were ingredients, but they also conjured the nursery rhymes, sugar and spice, everything nice. So that was enough to sort of take it out of that category of, well, the only perception would be one that is descriptive. Maybe it's going to conjure that nursery rhyme. But not in this case. And this is much more like the patents.com case, the Opadol case, where there, even the face of the idea was very broad. But based on what, and that was a use-based application, based on what appellant was doing, it was very clear that patents were a feature focus of that computer software for tracking things. And so patent due dates were one of the things that it tracked, and it was merely descriptive, therefore, of those goods. Sometimes they were patent-related. So, too, here, these are law-related services. So to get you over that line to suggestiveness, you need more than what you have here. You actually need some evidence in the record, and they didn't provide any. There's no counter-evidence here to rebut the prima facie case. It's just a terminology. Your opponent says that this case doesn't hang on the perception of E. Perhaps I missed it, but are there cases where we have dealt with E-something? I'm not aware of this court having dealt specifically with E-something. You have dealt quite a bit with .com, and those are pretty comparable when you're going to look at the electronic Internet world that we're in today. It is the office policy in practice, and the TTAB has addressed the E component quite a bit, that when you just take the E prefix for something that's electronically provided over the Internet and combine it with a term that is otherwise descriptive or generic, it is not going to be enough to take you out of the descriptiveness or genericness category by itself. I'm curious about this aspect of the distinction between suggestiveness and descriptiveness, and that is presented by this case and by Opadol, the disparity between the scope of the service presented and the scope of the term that's used in the mark. The question is, when does that become great enough to lead one to conclude that the mark is suggestive? In this case, for example, you're dealing with a very broad term, assuming that lex means law, but a very narrow service, and the same thing was true in Opadol. In other cases, the converse is true, where you would have a very narrow term but a broad service. If I were to start a Mexican restaurant chain and call it Chile con Queso, would that be suggestive? Yes, I do serve Chile con Queso, but it's just one of many, many dishes on my menu. Is there a point, to take that example as a starting point, at which even though the term is itself descriptive of something that I do, it is so small a component of what I do that it becomes suggestive? I think there is a point at which, you know, if it's a really sort of obscure point of what you do, I don't think that we would find it merely descriptive, because you're looking again at what's the purchasing public going to think when they see this. So, Chile con Queso for restaurant services, they're going to know you're a Mexican restaurant. Maybe it's not that sort of calling to mind of a dish that you serve is not going to be enough to get you there, but it would really depend on what the evidence showed in that case. Or Staples comes to mind, has a store which serves... They sell many things, and Staples is just one of them. But if that term, I assume we're long past that in secondary, but if that term were presented, do you think that that would be suggestive of a store that sells office products, or would the fact that one of the things they sell are Staples would be enough to defeat the claim on the grounds of descriptiveness? I think the mere fact that one of the things that they sell wouldn't be enough. I mean, if you look at grocery stores, I don't think if you had the fact that they sell so many different items and you name the store one of the items, I don't think that's enough. Now, I haven't checked the office's records and practice, but I think the point you're making is a good one. It's not the situation we have here, though. I mean, this is a term that would be descriptive of many, many things that are legal related. This is the converse. This is the case of a broad term but narrow surface. Right. I mean, we don't want ID practice to drive registrability. You don't want people trying to craft their IDs in a way that somehow disguises or masks what they're actually doing. I mean, you get a mark for specific goods or services, and you want people to be forthright and accurate in that. And so this question sort of reminds me a little bit of the lawyers.com case, where in that case Reid Elsevier had removed lawyers from the ID and trying to get out of a generic misrefusal in that context. And we don't like that. So I think you've got to look at what the services on their face are and what the appellant is actually providing. And here we have an intent to use application, so really we are quite limited to what the identification of services is. We look at the dictionary definition, and we look at the purchasers, lawyers, and what are they going to perceive when confronted with ELEX? Are they going to understand it to have something to do with the law? Are they legal related services? And yes, on the face of it, they are. So when you have a broad term like this, in some ways it's almost more dangerous than the converse, what you're talking about, in that we certainly wouldn't – let's take e-commerce. You wouldn't allow someone to register e-commerce for some business-related function that's done over the Internet, no matter how narrow and specific it might be, because you don't want to take that term out of the public domain until such time as the party could show that people actually associate it with me. And that's one of the options that appellant has here. This is not a generic misrefusal. This is not saying this is incapable of ever functioning as a trademark. Right now, the PTO and its gatekeeper role are not permitted to register terms that are merely descriptive on the principal register and afford those benefits of exclusivity and the right to exclude others that the principal register gives to registrants. We're saying right now, you can't get it because you're merely descriptive, but if you can come back and show us with evidence that the public associates ELEX with your services, with you as a source identifier, they could come back in and apply to re-register on the basis of acquired distinctiveness. So it's – we have to be clear on what we're looking at here, and it's a descriptiveness refusal. I don't know if I have really anything else to add. It seemed that the court understood the issues in the government's position quite well. So unless you have any further questions, I'll see the rest of my time. Thank you, Ms. Heber. Thank you. Bailyn, you have two minutes. Thank you, Judge Ritter. I just have three quick points. The first, going to the issue of broad description and a narrow mark versus a narrow mark and a broad description. Our position is that, similar to the appellee's, that the crux of the inquiry is whether – is the relatedness. So while you could have – well, you know, one being broad and the other being narrow, the inquiry should focus on whether or not the relationship between the mark and the goods and services provided. So, again, the thrust of our point is that while what – the services performed under ELEX may be minimally related to the law, there is a tenuous relationship there, that the immediate qualities and characteristics of the actual service provided are not immediately conveyed to and in mind of the relevant purchasing public. Secondly, the PTO makes the point that they don't want applicants to fiddle with the IDs, that they don't want an ID-driven practice, I believe is what my colleague said. And that's not what we're doing here. We weren't – we aren't fiddling with the ID. We didn't pull a lawyers.com where we tried to register lawyers.com for the provision of legal services, and then at the last minute, right when we were about to get rejected, yank lawyers out and still try to shove the rest of the description through. We've stayed true to what we do, and the description has stayed relatively the same throughout prosecution. Finally, there are many other registrations, including the word LEX, for applicants that involve some sort of legal services. And while this court isn't bound, and nor was the TTA, the Trademark Channel Appeal Board, by those registrations, it just goes to show that there's no danger of us monopolizing the word LEX or going out and trying to exclude others from using the word LEX because there are so many other, not only groups who currently use it and have a use date before ours, but also have registrations for it. And in conclusion, we would just point out that we are not asking to proceed directly with registration, simply to the opposition period, which would allow those groups to come forward. Do you know offhand if all of those groups provide some form of legal or law-related services? I'm not sure if all of the applicants who have registration or all of the registrants who have registrations for containing the word LEX do, but I know many of them do, and that's in the records. Thanks.